We are ready to hear arguments in Ute Indian Tribe of the Uintah v. Lawrence. We're ready to hear from the tribe. Good morning, Your Honors. Good morning. My name is Frances Bassett, and I'm here with my co-counsel, Thomasina Realbird. We represent the Ute Indian Tribe. We are here on three appeals, 18-4013, 18-4030, 18-4072, and we appreciate the court's allowance of additional time. Appeals 4013 and 4030 deal with the district court's denial of an injunction to enjoin the state court proceeding that Mr. Becker has filed against the tribe. I will be arguing those issues. Ms. Realbird will be arguing 18-4072, which is the case in which the district court issued a preliminary injunction to enjoin the tribe's tribal court suit against Mr. Becker. Ms. Realbird and I will be dividing the time up amongst ourselves. We'd like to reserve 10 minutes for rebuttal. So I'll probably be stopping about 10 minutes in. I would like to begin by emphasizing what this case is not about. This is not a case that presents a novel or difficult question of first impression, nor is it a case in which there are no controlling United States Supreme Court or Tenth Circuit precedents. There are multiple applicable precedents, but in our view, the U.S. District Court and the Utah State Court have not acknowledged and are not abiding by those controlling precedents. Could you tell us what the status of the state court litigation is at this time? The state has voluntarily stayed that case until this appeal is resolved. And they stayed it when? Well, we were like about a week away from going to a jury trial. Okay, so earlier this year, approximately. Yes. Actually, the district court in this case, the federal district court, was ordered by the Tenth Circuit to conduct a hearing on the tribe's motion to enjoin the state court action. So the U.S. District Court had entered a TRO until that hearing could be held. Then the state court action was held in abeyance until the ruling was issued, which was at the end of April. The tribe in this case is seeking what was promised to the tribe in 1981. That is an injunction to enforce the federal court judgment that was entered in the tribe's favor and affirmed by the Tenth Circuit sitting en banc in 1985. That case is Utri v. Utah, 773 Fed 2nd 1087, commonly referred to as UTE 3. Does that apply here or are you reading it too broadly? I don't believe that we are reading it too broadly, because to determine what a case involved, you look at the pleadings and you look at the lower court's ruling and then what the appellate court did with it. And the fact of the matter is that that case was brought for one reason, and that is that the tribe had adopted a tribal law and order code. It covered both civil law and criminal law. And the state of Utah and two of its counties and some of its municipalities had said, we do not recognize your tribal code or your right to enforce it. We're simply going to ignore it. And so how does it apply here when we ruled that, yes, you can enforce your own code and your laws? How does that apply here to this case? Because the tribe had also sought an injunction in that case. And the district court, and it's very lengthy ruling at the district court level, but the court recognized that the tribal court had the right to exercise both a civil, the full panoply was the phrase used by the district court, the full panoply of its tribal authority within its reservations without interference by the state of Utah. To enforce what? To enforce its civil law, all of its governmental authority. Okay. How does that apply here to this contract case? Well, because this is a contract that was entered into in the reservation at tribal headquarters. Mr. Becker was hired, the tribe says, as an employee. He says as an independent contractor, but a governmental employee to manage the tribe's oil and gas department. I hate to keep interrupting you, but this is a case with a lot of questions for me. Has any court determined factually where this contract is going to go? Has any court determined factually where this contract was executed and performed? Yes, we have put into the record. Has any court made a ruling? I know there's evidence in the record, but has any court ruled on that fact question? Yes, the Ute Indian Tribal Court has made a ruling on that. It found that the contract was entered into at tribal headquarters on the reservation. Has the state court made a ruling on that? I believe that the state court has recognized that it was made on tribal headquarters. What the state court has done has said that the waiver of sovereign, that the state of Utah has jurisdiction over all cases in the state of Utah, including those on the reservation, and the only thing that is needed is a waiver of sovereign immunity. In other words, the court has equated the waiver of sovereign immunity to a vestment of jurisdictional authority. And that's where we have a disagreement. Do we look at a contract case under Utah law, whether or tribal law, where the contract is not only initially executed, but also where it is performed? Yes, and this contract was obviously performed on the reservation. Now, I do believe that there was a provision in the contract. I thought there was evidence that Mr. Becker was everywhere doing a lot of things all over the place, in other states even. Well, I mean, he did occasionally travel off of the reservation, yes, he did, and he was allowed to work a four-day work week. But his office, he was hired to run an entire tribal department. Well, do you think it's significant where the, not only where the contract was executed, but also where it was performed to determine who has jurisdiction here? If it's on tribal lands, then probably the tribe. If it's off tribal lands, then probably the state. Yes, but there has been no dispute that the contract itself was executed at tribal headquarters. It was at a meeting of the tribe's business committee, which is its governing body. I thought there was a factual. Yes, by the Ute Indian Tribal Court has made that determination. That it was executed on the reservation? Yes. Has anybody said where it was performed? Any court make a fact finding? Well, we have put into the evidence what we believe to be undisputed evidence that it was performed on the reservation. So are you talking about to Judge Waddups now? Could I clarify there? Yes. It looked to me like there was some evidence before Judge Waddups and maybe there was some argument about it, but there's no ruling on that issue. Well, what Judge Waddups found was that, to the best of my recollection, what he found was that the contract was entered into on the reservation. He assumed it. He assumed it for purposes of his ruling. He didn't make a finding. That's correct. And he did note that Mr. Beckers contends that he spent a lot of time away from the reservation. But, I mean, the fact of the matter is that how could anyone, a department manager, manage a tribal department outside of the reservation? His job duties were on the reservation. He was hired to implement one of the tribal ordinances that was attached as an exhibit to the contract. And in the agreement that's at the heart of this lengthy litigation, in that agreement he's referred to as an independent contractor. And he has explained, he has testified under oath, that the reason why he was hired as an independent contractor and not an employee was because there was a limit on what he could be paid as a tribal employee. I mean, we don't think it matters whether he was a contractor or an employee. He was hired to work for the tribe. Well, wouldn't it matter when you're looking at the authority of the tribal court over this individual, whether or not he was a tribal employee or not? Even under this most recent ordinance. The tribe's ordinance says that the tribal court has authority for anyone who conducts business with the tribe. So I think I've used up my first 10 minutes. I'm going to defer, turn it over to Ms. Reilbert. Good morning. Thomasina Reilbert on behalf of the appellants. I'll refer to them as the tribal parties. Regarding the injunction, after initially ordering the exhaustion of tribal court remedies, including any appeals, the district court sua sponte interrupted that exhaustion process and determined that the exhaustion rule did not apply because, according to the district court, the Becker contract, quote, is valid and tribal exhaustion, which was explicitly waived in the contract, is both unnecessary and futile. And there are at least two problems with the district court's conclusion that I would like to discuss today. One, the tribal exhaustion rule does apply, as the Tenth Circuit concluded in 2017 and as established by the Supreme Court. And two, the district court's reasoning here is not a recognized exception to that tribal exhaustion rule. In United States Supreme Court ruled in National Farmers Union Insurance Company, V. Crow Tribe of Indians, that the analysis of jurisdictional limitations that federal law places on tribal courts should be conducted in the first instance by the tribal court itself. The Supreme Court then said that exhaustion of tribal court remedies is required before any such claim may be entered by a federal court. This is known as the tribal exhaustion rule. The Supreme Court recognized the policy reasons behind the rule. One, it furthers federal policy of supporting tribal self-determination and tribal self-government. Two, it promotes the orderly administration of justice. Three, it provides other courts with the benefit of tribal court expertise on such jurisdiction matters. I want to quote a couple of the Supreme Court cases that I think directly speak to this point. In National Farmers Union, the court said tribal exhaustion ensures that the forum whose jurisdiction is being challenged is provided the first opportunity to evaluate the factual and legal basis for the challenge. In Iowa Mutual v. LaPlante, the Supreme Court said tribal authorities over the activities of non-Indians on the reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal court unless affirmatively limited by a specific treaty provision or federal statute. And here, the courts have recognized some exceptions to the tribal exhaustion rule. By my count, there are five. Three in National Farmers, the first one being where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith. Two, where the action patently violates express jurisdictional prohibitions. Three, where exhaustion would be futile because the lack of adequate opportunity to challenge the tribal court's jurisdiction. That's the Tenth Circuit recognized in the Stidham case, where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would serve no purpose other than delay. And the fifth one, recognized by the Tenth Circuit, is when it is plain that no federal grant provides for tribal governments' of non-member conduct on land covered by the Montana rule. And importantly, the Supreme Court in Iowa Mutual said that alleged incompetence of tribal courts is not among the exceptions to the exhaustion rule, as that would be contrary to the congressional policy of promoting tribal court development. The Tenth Circuit applies these exceptions narrowly, and it typically will not apply the exceptions so long as tribal courts can make a colorable claim that they have jurisdiction. None of the exceptions apply here, and what's important is the district court did not rule that any of the exceptions apply. Here what happened is the district court concluded that exhaustion would be unnecessary and futile, and to us this seems to be a misstatement of that third exception that the Supreme Court articulated in National Farmers. And if exhaustion would occur here, tell me what would follow then the tribal court's ruling? What are the next steps that should occur in your view? So the tribal court issued a ruling that covered most of the tribe's complaint against Mr. Becker. The court previously had bifurcated, I believe it was three of the counts from the fourth count, and said we're going to decide these three counts first. So those counts were decided on by the tribal court, and then they were subject to a stay. So that's where the tribal court was paused, but what can happen is because under the law and order code, the tribal court has a court that reviews it at the appeals level. If one of the parties wished to appeal that decision that the tribal court entered, that's a possibility under the rules of civil procedure. So there is a standing tribal court appellate court? There's an appellate level court. And then also the fourth count from the tribe's complaint needs to be disposed of, however the court decides to handle that. So right now the tribal court's ruling is interlocutory, you would say, because there's still a claim outstanding? Well, no party has petitioned for an interlocutory review. But I mean, it's not final is my point. It's not final, yes, Your Honor. Thank you. Thank you. It's not final. But there's a process, and I think that's the point. And, you know, before the tribe could even venture down that path or any of the parties decide to appeal or how the court was going to consider the rest of the tribal court case, the district court here entered the injunction and we think it violated it. Should we look at the chronology of what happened when here? If you have this ongoing litigation in state court, and it's gone to the point that it's being set for trial, when in the chronology did the tribal court enter its ruling? The tribal court entered its ruling at the end of February, on February 28th. But I think this circuit... So this is all happening pretty much at the same time, that is that the state court is proceeding and the tribal court begins to proceed, or had the tribal court started its work before? The courts were going at the same time. So, for example, in February, on February 14th, there was a hearing before Judge Waddups in the district court. He initially denied Mr. Becker's injunction. On February 16th, the tribal court had hearings on the tribe's motions for summary judgment. And then later in the month, or later, maybe it wasn't the same month, but later the district court sua sponte said, here's a memorandum decision and order under seal. I want to see the parties, and you can tell me why this memorandum decision order was invalid. But that was sua sponte in this case. He had originally said, I'm going to not issue the injunction against the tribal court. Exhaustion does apply here. There's a consensual relationship, and that needs to play out, even through appeals. So it was a complete 180, so to speak, when the district court said the exhaustion rule does not apply. I do want to point out- The state court litigation that was initiated by Mr. Becker was filed in December of 2014. Is that right? I don't have the date in front of me, Your Honor.  The Tenth Circuit has said in at least two cases that it doesn't even matter. Let's see, the Smith v. Moffitt and Brown v. Wash U Housing Authority, we didn't brief that because it wasn't an issue. But the Tenth Circuit has said in both of those cases that the absence of a tribal court case did not diminish the application of that exhaustion doctrine. And I do want to point out, all of these cases going at once was one of the policy reasons that support the exhaustion rule to provide for the orderly administration of justice. And I think the National Informers Court called it a jurisdictional chaos or mess. I think that's where we are. I think chaos is a good description of these cases. What is your view of what jurisdiction we have? What is our statute you're relying on for federal jurisdiction here? Well, under 28 U.S.C. 1331, the federal courts have jurisdiction to determine whether a tribal court has exceeded the bounds of tribal court jurisdiction in light of federal treaties or statutes. In other words, can the person challenging that tribal court jurisdiction identify a federal statute or treaty or law that says this tribal court is exceeding its jurisdiction? And that hasn't happened here. I'll reserve the rest of our time. Counsel, before you reserve, can I just get you to follow up where I thought you were going, but we steered you elsewhere. On the futility exception, you were about to tell us, I think, why, in your view, it was improperly employed here. Can I just get you to finish that thought? Oh, thank you, Judge Eyde. That's great, because we do want to make that point. Here the district court seemed to misstate the third exception. He said it's unnecessary and futile. But what the exception actually says is where exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction. Here, Mr. Becker nor the court have made a showing that there is not an adequate opportunity to challenge. Here, Mr. Becker has actually challenged tribal court jurisdiction three times in the motion to dismiss, and he also has the avenue of tribal appeals that we discussed earlier. Thank you. Thank you. Thank you. Good morning, Your Honors. Nancy Sylvester for the Honorable Barry Lawrence. I only have a couple of points to make, and that's probably pretty clear from our brief that we don't have a lot to say here. This is really a dispute between the parties in interest. That said, I would like to just make a couple of points and then cede the rest of my time to Mr. Isom. The first one is Judge Lawrence has determined that the state court has jurisdiction to proceed. Judge Waddup, as you've seen, has determined the same. If this court affirms Judge Waddup's opinion, Judge Lawrence will once again set this case for trial. And Judge Briscoe raised the question of kind of the chronology of this case. The case was set for trial for February 26th through March 2nd of 2018, and Judge Lawrence stayed the case February 20th of 2018. And what state court jurisdiction is relied on here? I'm sorry, I'm not sure I understood. What is the basis for the state court's jurisdiction in this case? Well, Judge Lawrence did a pretty comprehensive analysis in two opinions. One was, let's see, there were two motions for summary judgment. This was back in February 9th of 2017. Judge Lawrence analyzed basically on the basis of the case law, for example, C&L Enterprises. Judge Waddup, of course, went into much more comprehensive analysis that complemented that. Was there any finding by Judge Lawrence as regards where the agreement was executed and performed? It was mentioned about where it was executed. His rulings were really limited to the legal issues. He didn't get into any factual issues. Well, jurisdiction, the fact question of where this agreement was executed and performed in a contract case, I think will guide us to the answer as far as jurisdiction. I think you're right. And I haven't closely looked at that question. I was starting to try to go through his opinions to figure out if he had actually gotten to that. But my understanding was he went primarily to the legal issues. But, again, he went through, you know, we've got a contract action here. There's been a valid waiver under Article 23. And then under the case law it suggested that if the tribe has waived its sovereign immunity and the state court. But a waiver of sovereign immunity is a waiver of a defense. That isn't a creation of jurisdiction. Well, and I guess that's where that butts up against Judge Waddup's opinion. Because Judge Lawrence, as he went through the case law, determined that, especially in C&L Enterprises. Well, C&L Enterprises is an easier case than we have here. Because the action that was at issue occurred off of the reservation. Right. So then if you're off of the reservation, then you're in the state of Utah. And then the question becomes, all right, can you sue the tribe? And you can sue the tribe until and unless they have sovereign immunity. So then you get down to the waiver of sovereign immunity. Well, I guess what the state court's biggest concern at this point is, if we have a contract action that actually says that the Utah state laws apply, when is that enforceable? I mean, that's our biggest question, is that we've got this, although C&L did happen off reservation, it does contain some language that seems to suggest that there could be, it could encompass on-reservation conduct. And so the courts are really, our state court's biggest interest is, when would we be able to get involved in these kind of cases? If not this one, when you have a really clear waiver that's followed tribal law, then when? I think I'll cede the rest of my time to Mr. Isom. Thank you. Good morning, Your Honors. David Isom, representing Lynn Becker, who is with me at the table. May it please the court, I would like to start by answering the questions that I've heard. The first is, is there any record evidence of where the contract was entered? The only evidence that I'm aware of about that is that the contract itself says that it was approved by resolution on the reservation in Utah. I'm not aware of any record evidence as to where it was executed. As to where it was performed, there is a lot of record evidence about that. First, it is an independent contractor agreement, and by its terms it provides that the contractor, this is Section 4 of the agreement, the contractor shall determine when, where, and how to perform those activities necessary to fulfill the position. Then it says there shall be no requirement that services be performed on the tribe's premises. Okay, that's all good, but has any court made a finding? We have evidence. Has any court made a finding? No. Because we're not, we're an appellate court. We don't make findings. District court, other trial courts, tribal courts make findings. I don't think there's any finding as to where it was executed. So we're just sort of adrift here as far as jurisdiction is concerned, is that right? I don't think so at all, Your Honor. I don't think where it was signed has any relevance. How about where it was executed? It's a contract case. Yeah. Yeah. Does that matter, where it was executed? No, it doesn't matter a bit. It doesn't? No. And let me explain the reason for that. First, the tribe, of course, exists within the state of Utah. Oh, let me finish the record of, well, I'll just answer your question. It's in there. It's in there. We can see it. Yeah. The record evidence is that about 45 percent of Mr. Becker's efforts were conducted off the reservation throughout the United States. The reason we think the place of execution is not important is that it's a contract, that it states that it's governed by Utah law. The courts of Utah have general jurisdiction. There's no doubt that there's minimum context that gives them jurisdiction over this action. We think the only remaining question that could apply to state court jurisdiction is whether any federal issue supersedes or preempts that state court jurisdiction. That gets us to Kiowa and C&L Enterprises. Kiowa held that state courts have jurisdiction over tribes in either of two circumstances, where Congress has so authorized or where the tribe has waived sovereign immunity. That was applied. And, by the way, it said that the immunity that it was addressing was for immunity for matters both on and off the reservation. C&L picked up that language and noted that the building at issue there was off the reservation, though owned by the tribe. But it picked up the Kiowa language and said, the sovereign immunity and the waiver thereof that we are analyzing applies in commercial contract cases, whether the conduct or the execution or the performance is on reservation or off reservation. Our position, Your Honors, is that the location of execution for a commercial contract between a tribe and non-Indians is not dispositive of whether a state court has jurisdiction. This state court has jurisdiction partly because the contract says that it does, and I'll get into those terms, and partly because the Supreme Court says that, in general, state courts have jurisdiction where Congress has given authority to work. Where has that happened? Where has Congress authorized the state courts to have jurisdiction here? Congress has so authorized by 1324. Are you looking at 1322? Because that requires tribal consent. It's very specific. There has to be a vote, as I recall here. Special election. Special election. Has there been one? Well, there hasn't been that here. There hasn't been a vote. So there is no jurisdiction under 1322. Judge Waddup's held, and I think he's correct, that the special election only applies to the seating of general jurisdiction. He got there from a reading of Kennerly, I believe, but it seems to me that Kennerly says just the opposite of what Judge Waddup's held on that. Well, I don't have an answer for that. Do you agree that the language of Section 1326 is quite broad? Right. And it doesn't seem to distinguish tribal consent for special or in limited situations. It doesn't seem to matter what the scope of the jurisdiction is. Right. Does that make sense? We are relying principally on the language of both Kiowa and C&L that say that a state court has jurisdiction if Congress has so authorized or, and it is an independent matter, as C&L shows, or if there is a waiver of sovereign immunity. Well, what you're saying here is, I guess, and I think this is what Judge Waddup's was saying in his ruling, that there can be a selective waiver of sovereign immunity. And, again, it hurts my brain to say jurisdiction and sovereign immunity in the same sentence, because sovereign immunity should be quickly followed with the word defense or preceded with the word defense of Shouldn't it? Isn't it a defense? It doesn't create jurisdiction. We think that both Kiowa and C&L says that you can create jurisdiction in a state court by waiving sovereign immunity and consenting to that jurisdiction. In a specific document, that is, so it would just be, if you have a contract with the tribe and they say whatever they say in this agreement, then the state court has jurisdiction. Right. Your Honor, I haven't mentioned one of the most important So the special election problem that Judge Moritz is talking about is not applicable here? How do we get around that? It isn't applicable because the special election only applies to the seating of general jurisdiction. In other words, making state courts That was Judge Waddup's interpretation of the Kennerly case, but there's no case law that supports that position, is there? I'm sorry, I don't know that. I don't believe there is, no. This contract was executed in 2005, made retroactive to 2004, in the context of the recent enactment of the Indian Tribal Economic Development and Contract Encouragement Act. That act is extraordinarily important here, in part because the legislative history of that act includes the statement that with that amendment, contracts with Indian tribes don't require secretarial approval, even if they are for personal services and for contracts for personal services performed on tribal land. That just goes to secretarial approval. That doesn't, again, get us to jurisdiction. I'm sorry, I didn't hear you. That just goes to whether or not you have to have the approval of the Secretary of Interior for your contract. And you're saying in your case you didn't have to have it, and I think maybe not. Well, the act was enacted to encourage contracts between tribes and non-Indians. Right. The problem before the act was the statute says that you have to get secretarial approval of anything relative to Indian tribes, and the Congress found that was unworkable and interfering with commerce. And so they amended that statute, which, by the way, had retroactive light shed on 177 and 2102, the result of which is under that act now it is absolutely clear that no secretarial approval is required of this contract. As to jurisdiction, again, C&L doesn't say we're only creating jurisdiction for independent contractors relating to off-reservation or on. Either one, it applies to both. And it says that state courts have jurisdiction over tribes where the tribe has waived sovereign immunity. Well, but, again, aren't facts important here? Both Kiowa and C&L both involve off-reservation contracts by federally recognized tribes. That's right there in the beginning, second page of C&L Enterprises. But, yes, that's true, but their holding isn't limited to that at all. Nothing in those cases. Well, we don't want holdings that exceed the facts, do we? You're saying yes. We read the language of the contract as saying for independent contracts it is irrelevant whether the building is being built on the reservation or off. The question is, think about it from another perspective. The state courts are the workhorses of Indian-related contracts. That is, think about what contracting would be if state courts had no jurisdiction over Indian-related matters. There are only two other alternatives than the state court. One is federal courts. Judge Briscoe, you asked about jurisdiction here. I believe Your Honor wrote the opinion in 2014 holding that. That was a good opinion. Oh, it was wonderful, and it's been cited and approved both by this court and others. But that issue, that question or whatever we were looking at then, there we were looking at whether or not the waiver of sovereign immunity was somehow something that could give federal courts jurisdiction. Right. Can a defense equate to jurisdiction? Right. We said, no, it can't happen. Exactly right. Yeah. And so, of course, we accept that. It's correct. So what that case illustrates is that federal courts are generally not available to adjudicate Indian tribe-related matters for two reasons, one of which Your Honor emphasized. The other is there's no diversity jurisdiction if an Indian tribe is a party. And as Your Honor emphasized, if the federal issues, and there are plenty, are only defenses, that doesn't create 1331 jurisdiction. But when Judge Hartz in the subsequent opinion says that, well, in the 2014 opinion, we were looking very narrowly at this issue that we've been discussing, and now we're looking at something different, and we should go back into the pond and see what's in there. Right. So was there something wrong there, or where are we? Well, I think, Your Honor, that I'm assuming we're bound by that decision of this court in, I think it was, anyway, 2016, I think. Okay. Our understanding of that is that where the federal issues were only sort of under the well-completed complaint rule were only anticipated federal defenses, that didn't create jurisdiction. This court held in an opinion by Judge Hartz on a later appeal that there was jurisdiction here because there was an issue of whether the federal court could enjoin the state court, and that issue itself created the federal jurisdiction. And the court held also through Judge Hartz that the action we brought, that Mr. Becker brought, created jurisdiction for similar reasons. So we think we are at the point where it is clear that this court now has jurisdiction, but you notice that the substance isn't before the court. We still don't know where we can have adjudication. Right now we're in three courts, which there's something wrong with that picture. I think in the ruling of our court in November 7, 2017, which I think was a correction of some sort of an earlier one, Judge Hartz in the opening paragraph writing for the court said, We hold that the tribes claim that federal law precludes state court jurisdiction over a claim against Indians arising on the reservation. He accepted that fact. A claim against Indians arising on the reservation. I am still not certain any court that can make factual findings has made that finding. And I can agree with him if that's the road we're going down. If we're on reservation, then okay, let's talk about tribal law, let's talk about tribal courts. Let's see who has jurisdiction here. Your Honor, we believe that that determination is irrelevant for the reasons I've stated. And besides that, there's no record evidence as to where this contract was entered into. Okay. Well, then who has jurisdiction and why? The state court, you would say, and why? Okay. So leaving the federal court for the moment, there now turns out to be federal jurisdiction according to the Tenth Circuit recently. So I suppose we could bring counterclaims and adjudicate the whole thing in federal court. We hope that's not necessary. It's an enormous waste of the state's resources and of our resources. So then let me move to tribal court. Tribal court clearly has no jurisdiction because its ordinance prohibits any claim against the tribe or the business committee, period, both under the old ordinance and the new ordinance. And the contract says that this must be adjudicated if not in federal court, then in a court of competent jurisdiction. And clearly the contract says a court of competent jurisdiction has to be a place where in a contract dispute you can get a full determination of fact and law relating to the agreement. So the statute prohibits, it never could have been a court of competent jurisdiction because the ordinance prevents any claim against the tribe in tribal court. It also prevents any claim by the tribe against Mr. Becker unless Mr. Becker was an employee. How do you determine, how does the court determine whether he was an employee? The answer is you look at the contract. The contract says it's governed by state law. Utah state law makes it clear that a contract at about 10 different ways and times says this is an independent contractor agreement and not an employment agreement is an independent contractor agreement. So we're left with either no court, which by the way reminds me of the chronological question that Your Honor asked. Let me answer that. The distribution of the net revenue of $378 million was in 2012. In 2013, we brought an action in federal district court. This court through Judge Briscoe affirmed the dismissal of that for lack of jurisdiction and shortly thereafter in December of 14, we brought the state court action. It was not until the tribe was dissatisfied with what was going on in the state court that they tried to sue in tribal court. To say that another way, for three and a half years, the tribe, presumably having read the contract, that says we waive any requirement of tribal law that you bring the action in tribal court. We waive any requirement of exhaustion. We waive any requirement of the application of tribal law. They didn't even dream of the tribal court until three and a half years after the litigation started and that was 20 months after they had been in the state court. Again, we're in three different courts at this time. Should we abstain? What about the abstention doctrines? Younger? Sounds good right now. I'm sorry, I'm not prepared. I'm not prepared on abstention. Well, you know, I mean, you've practiced for a long time and you're an astute counsel. I mean, you know that normally we don't have cases going on in two courts at the same time, much less three. And particularly when we have a state court litigation that has been pursued for these many years, normally we say younger abstention applies, comity applies, anti-injunction applies. I mean, the list is long. You're so generous. We actually have in another life about two years ago in this proceeding asserted, and I think Judge Lawrence asserted, and we both briefed abstention. And nobody addressed it. Nobody has addressed it. When it was raised and the state court addressed it, did Judge Waddups address it? I don't recall that he addressed abstention. If we abstain, what happens? Now then you're in two courts instead of three. Well, I think it depends on the terms of the abstention, and in part the answer to that relates to the rest of the chronology. The state case was set for trial in mid-February of this year. Because of the mandate of this court to Judge Waddups at the last moment, I think within a week before the trial was to start, he read that mandate as saying that he should enjoin that, and he enjoined that. Then there was a question whether that was permanent or whatever. That became moot because the state court held that it would not move forward until direction from this court. Yes. It's exhausting. To finish, the theme of the workhorse of state courts, we understand there's been a long-running dispute in those cases called Ute v. Utah. We understand there's bad blood. We didn't understand those cases were going on. We just sued on a contract. We've spent a lot of time reading those cases. Those cases don't create preclusion. I mean, it's not the same parties. They don't create stare decisis. If anything, they create some authority, but for the life of me, I can't find that they create any authority that has any impact on this case. So we think they are irrelevant. Let me just mention in the time I have left their arguments that tribal court oh, no, let me also talk about secretarial approval. If this contract is not void, we believe that it gives jurisdiction to the state courts of Utah, maybe Colorado too, but anyway, state courts. Either that or it's simply not enforceable. We think that ironically what is at issue in this case in the narrow sense is whether Mr. Becker will be paid what he was promised, but ironically the general issues because of the history of this case, the arguments that have been made, the defenses, the claims, this case will have an enormous impact on the ability of people to contract with Indian tribes and Indian tribes to contract outside of their tribe in the whole country. And ironically, we believe that if the tribe's positions here, namely that they can five years into it, say the section 17 corporation applies, even though for five years they said it didn't, and they can say that there's this unpublished tool opinion and that there's this ordinance that's not publicly available, if that is the way Indian contracts live, it's depressing to that possibility. That's the exact reason section 81 was amended in 2000 to encourage, it's called the Contract Encouragement Act. It was enacted to encourage contracts between tribes and non-tribes. If there's no state jurisdiction, there's virtually no place to adjudicate and enforce and interpret those contracts, and that will discourage contracts. One final thing about secretarial approval, they argue that the Noble case requires that. In closing, let me mention that the BIA examined this question in its July 2, 2007 letter and read underlying agreements and concluded, we conclude that the restated agreement, and that's the operating agreement, and the reason that's relevant here is that the revenues distributed according to that agreement is not subject to the BIA review, and it creates no interest in tribal lands. Thank you. Thank you. Thank you, Counsel. So I want to quickly make a couple of points, and then I will turn it over to Ms. Roebert. During opposing counsel's time, I have here the tribal court's ruling on the tribe's partial summary judgment motions, and here is what the tribal court found, and I will read from it, that Mr. Becker, quote, was a tribal employee or independent contractor. He entered into an IC agreement with the tribe to manage and develop the tribe's energy and mineral resources. The IC agreement was negotiated and entered into on the Uinta and Olray Indian Reservation. He was given an office in the tribal business complex in Fort Deschenes. The resources that he was to manage and develop were on land belonging to the tribe and held in trust for the tribe and its members. What do we do with opposing counsel's point that under the ordinance that determines the jurisdiction of tribal court, they have no jurisdiction over this type of dispute? Well, I think Ms. Roebert was prepared to answer that, but let me answer it this way, that Mr. Becker, the tribal court certainly does have jurisdiction over the tribe's complaint against Mr. Becker, and in our complaint, we have asked the tribal court to declare that that is an illegal contract under both federal law and tribal law. Now, if and the tribal court has made a preliminary or interlocutory ruling to that effect, so if that contract is no longer valid because it's that contract that has a waiver of sovereign immunity in it, it becomes a moot point as to whether or not the tribal court has jurisdiction over a counterclaim that Mr. Becker may wish to assert because if the contract is invalid, there is no waiver of sovereign immunity, and then if there are tort claims that Mr. Becker would want to bring in the tribal court, there would be no waiver of sovereign immunity for those claims either. In fact, the fact of the matter is that the tribe has a process that's reflected in their ordinances or resolutions of handling such matters. What they do as a practical matter is they refer any claims that are made against the tribe itself or the business committee, they refer those to an independent judge that is hired who proceeds to handle that in a regular judicial format. But I would like to go back and say that Mr. Isom is also incorrect in saying that there is no evidence of record to say where the contract was entered into. The tribal court's ruling was based upon the declaration of Irene Kutch, who was the chairwoman of the tribe's governing body during a portion of the time that Mr. Becker was employed for the tribe. Her declaration says, as a matter of personal knowledge, that Mr. Becker's contract was negotiated and entered into at the tribal headquarters complex in Fort Duchesne. So there is record evidence of that. So you have both representation or representatives of the tribe signing the contract and Mr. Becker also signing the contract on the reservation in tribal offices? Yes. That's your view? Yes. And Mrs. Kutch's declaration testimony to that fact. I want to quickly point out we believe that there are no grounds for abstention. That wasn't sort of in the parameter of issues that have been raised. But we did raise it in one of our motions for injunctive relief before the district court. You will find those arguments in ECF 54. And specifically as to younger abstention is not proper because what the court does is sort of say, well, which interests predominate here? Do state interests predominate over federal issues? And what this Tenth Circuit has held consistently is that when an Indian tribe is involved, there are issues of federal law and that those predominate over the issues of state law and so younger abstention is not applicable. I'm going to turn it over to Ms. Ruehl. Oh, I think one other thing I want to mention just very quickly. The U.S. Supreme Court has held that public law 280, that is 25 U.S.C. 1321 through 26, does not apply to Indian tribes. And we have cited both not to tribes themselves. It applies only to individual Indians. Are there any cases actually saying that, though? I mean, I think the cases you rely on, that wasn't the issue in those cases. Well, but it was in California v. Cabazon Band because California is one of the original PL 280 states. And so what California did is when the Cabazon Band was setting up an Indian gaming facility or whatever, California just came in to shut it down. And they said, we can do that because this is a PL 280 state. And the Supreme Court said, nope, PL 280 does not apply to tribes themselves. I didn't read it quite that way, but that's the strongest case you have. So you would say that we wouldn't even get to the statute. I mean, the statute just doesn't apply is what you're saying. Yes, and it is clear from the text of the statute itself, the conferral or consent to jurisdiction is in subsection A, and it does not use the word Indian tribes, whereas it does down in the prescription, which is under subparagraph B. Are you aware of any cases other than this potential case, I guess, where it would be applied to Indian tribes? I'm not aware of any. Okay. Thanks. Opposing counsel has said there is no court to decide the contract dispute, and that's simply not correct. The tribal court has jurisdiction to hear this dispute. Even under the concurring opinion in the 2017 appeal that was admittedly dicta, that that's a possible interpretation. And what Mr. Becker seeks to have this court do is what the district court, and I think what we heard the state court did, is to independently analyze the tribe's jurisdiction ordinances, independently analyze the contract, and substitute federal and state judgment for the tribal court analysis of the tribe's jurisdiction laws, and to determine the contract's validity, and by extension interpret this waiver of tribal court exhaustion. And we think this approach is wrong for three reasons. First, a federal court's authority, as mentioned earlier, under 1331, is limited to determining whether federal law has divested the tribe of its tribal court civil jurisdiction, and that goes back to national farmers. There has been no exhaustion of tribal court remedies at this time. And third, the tribal court is the proper court to interpret tribal law, including the purported waiver and the language in the alleged contract. So are you saying that both the federal court and the tribal court have jurisdiction? What we're saying is the tribal court has jurisdiction to decide the contract dispute. With regard to the 1331 jurisdiction, we do think that Judge Waddup's in enjoining the parties from pursuing the tribal court has exceeded what the federal court does. What the federal courts do is decide whether there's any federal limitation on the tribal court's exercise of its jurisdiction. And I do want to point out that courts have held that the tribal court is the proper court to interpret tribal law, and we cite to Talton v. Mays, the Cohen's Handbook Second Circuit case, the Harvey v. Indian Tribe case in Utah State Court. And I do want to finally emphasize that it's not necessary for the 10th Circuit to take up the legality of the contract if this court determines that there's a colorable basis for tribal court jurisdiction, and second, that the exhaustion has not happened in tribal court. Thank you. Thank you. Thank you all for your arguments this morning. The case is submitted. Court is in recess until 9 o'clock tomorrow morning.